**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

JANE DOE,                                    )
                                             )
                                             )        Civil Action No. 1:21-CV-00370
                    Plaintiff,               )
          v.                                 )
                                             )        Hon. Nancy Torresen
PAULO CERQUEIRA AND MARA                     )
CERQUEIRA,                                   )
                                             )
                                             )
                    Defendants.              )


**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTORY STATEMENT ...................................................................................................1

FACTS ..........................................................................................................................................2

LEGAL STANDARD.....................................................................................................................4

ARGUMENT .................................................................................................................................5

I.     THIS COURT HAS SUBJECT MATTER JURISDICTION AND THE
ROOKER-FELDMAN DOCTRINE DOES NOT APPLY ....................................................5

     A.    PLAINTIFF IS NOT A "STATE-COURT LOSER" BECAUSE THE
STATE COURT DID NOT FIND "NO ABUSE." ....................................................5

     B.    PLAINTIFF IS NOT COMPLAINING OF AN INJURY CAUSED BY A
STATE-COURT JUDGMENT...................................................................................7

     C.    PLAINTIFF IS NOT SEEKING REVIEW AND REJECTION OF A
STATE-COURT JUDGMENT...................................................................................8

II.    ISSUE PRECLUSION DOES NOT APPLY ......................................................................8

III.   PLAINTIFF HAS STATED CLAIMS FOR WHICH RELIEF CAN BE
GRANTED .........................................................................................................................9

     A.    PLAINTIFF HAS ALLEGED FACTS SUPPORTING A CLAIM OF
TRAFFICKING IN VIOLATION OF THE TVPRA. ...............................................9

     B.    PLAINTIFF HAS ALLEGED FACTS SUPPORTING CLAIMS FOR
UNJUST ENRICHMENT/QUANTUM MERUIT.................................................12

     C.    PLAINTIFF'S CLAIM FOR ASSAULT AND BATTERY IS NOT
PRECLUDED. ......................................................................................................13

     D.    PLAINTIFF HAS ALLEGED FACTS SUPPORTING A CLAIM FOR
FRAUDULENT MISREPRESENTATION. ..........................................................13

     E.    PLAINTIFF HAS ALLEGED FACTS SUPPORTING A CLAIM FOR
BREACH OF CONTRACT....................................................................................14

     F.    PLAINTIFF HAS ALLEGED FACTS SUPPORTING A CLAIM FOR
FAILURE TO PAY WAGES. ...............................................................................14

CONCLUSION...........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aladdin Elec. Assocs. v. Town of Old Orchard Beach*,
 645 A.2d 1142 (Me. 1994).................................................................................13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...........................................................................................4

*Cannon v. Spokane Merchs. Ass'n*,
 502 F. App'x 683 (9th Cir. 2012) .....................................................................6

*Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*,
 4 F.4th 63 (1st Cir. 2021)..................................................................................4

*Coles v. Granville*,
 448 F.3d 853 (6th Cir. 2006) ............................................................................7

*Connolly v. Connolly*,
 2006 ME 17, 892 A.2d 465.............................................................................6, 7

*Davani v. Va. Dep't of Transp.*,
 434 F.3d 712 (4th Cir. 2006) ............................................................................7

*Davies v. United States*,
 124 F. Supp. 2d 717 (D. Me. 2000) ..................................................................4

*Dinan v. Alpha Networks, Inc.*,
 857 F. Supp. 2d 162 (D. Me. 2012) ................................................................14

*DuLaurence v. Telegen*,
 94 F. Supp. 3d 73 (D. Mass. 2015) ...............................................................7, 8

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
 544 U.S. 280 (2005)..............................................................................5, 6, 7, 8

*Flaherty v. Muther*,
 2011 ME 32, 17 A.3d 640...............................................................................14

*Galibois v. Fisher*,
 174 F. App'x 579 (1st Cir. 2006).......................................................................7

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010)................................................................7

*Hulsey v. Cisa*,
    947 F.3d 246 (4th Cir. 2020) ...........................................................6

*Kovacic v. Cuyahoga Cnty. Dep't of Child. and Fam. Servs.*,
    606 F.3d 301 (6th Cir. 2010) ...........................................................6

*Lundquist v. Precision Valley Aviation, Inc.*,
    946 F.2d 8 (1st Cir. 1991)................................................................4

*Madore v. Kennebec Heights Country Club*,
    2007 ME 92, 926 A.2d 1180............................................................15

*Mikhail v. Kahn*,
    991 F. Supp. 2d 596 (E.D. Pa. 2014) ..............................................8

*Miller v. Nichols*,
    586 F.3d 53 (1st Cir. 2009)...........................................................7, 9

*Mouloki v. Epee*,
    262 F. Supp. 3d 684 (N.D. Ill. 2017) ..............................................11

*Ocasio-Hernandez v. Fortuno-Burset*,
    640 F.3d 1 (1st Cir. 2011)..............................................................13

*Paguirigan v. Prompt Nursing Emp. Agency*,
    286 F. Supp. 3d 430 (E.D.N.Y. 2017) ............................................11

*Paguirigan v. Prompt Nursing Emp. Agency*,
    No. 17-cv-1302, 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019) ............12

*Portland Water Dist. v. Town of Standish*,
    2008 ME 23, 940 A.2d 1097............................................................8

*Portugues-Santana v. Rekomdiv Int'l Inc.*,
    725 F.3d 17 (1st Cir. 2013)...........................................................4, 9

*Puerto Ricans for P.R. Party v. Dalmau*,
    544 F.3d 58 (1st Cir. 2008)...........................................................5, 8

*Richardson v. Winthrop Sch. Dep't*,
    983 A.2d 400 (Me. 2009)...............................................................14

*Tyler v. Supreme Jud. Ct. of Mass.*,
    914 F.3d 47 (1st Cir. 2019)...........................................................5, 8

*United States v. Alzanki*,
   54 F.3d 994 (1st Cir. 1995) .................................................................................9

**Statutes**

26 M.R.S.A. § 621-A through 626-A ........................................................................15

26 M.R.S.A. § 626 ...........................................................................................14, 15

18 U.S.C. § 1584 ...................................................................................................9

18 U.S.C. § 1589 .............................................................................................9, 10

18 U.S.C. § 1590 .............................................................................................9, 11

18 U.S.C. § 1593A ...........................................................................................9, 12

18 U.S.C. § 1595 .............................................................................................5, 9

22 U.S.C. § 7102(3) .............................................................................................10

28 U.S.C. § 1331 ...................................................................................................5

28 U.S.C. § 1367 ...................................................................................................5

**Other Authorities**

Rule 12(b)(1) of the Federal Rules of Civil Procedure ..............................................4

Rule 12(b)(6) ...............................................................................................1, 4, 9

Plaintiff Jane Doe respectfully opposes Defendants' Motion to Dismiss the Complaint, Dkt. 13 ["Mot."].  Ms. Doe has sufficiently alleged the causes of action asserted in her complaint. She has also alleged claims over which this Court has jurisdiction.  For these reasons, Defendants' motion must be denied.

## INTRODUCTORY STATEMENT

Most of the ink in Defendants' Motion is spilled trying to argue that this Court cannot consider Plaintiff's complaint because of what Defendants call a "finding of no abuse" made by a state court.  Mot. at 8.  Defendant's premise, that there was a finding of no abuse, is untrue. Plaintiff Doe agreed that the state court need not make a finding of abuse.  Mot., Ex. B at 11:14-16.  No state court has considered the issue of whether Defendants abused Plaintiff and judged that they did not.  For this reason alone, Defendants' 12(b)(1) arguments fail.  The Rooker-Feldman doctrine does not apply because the Plaintiff is not attempting to make an end-run around the regular appeals process.  She did not "lose" in state court, nor is she complaining of a harm *caused* by a state-court judgment.  Similarly, issue preclusion does not apply because no court has considered and ruled on the issue of whether Defendants abused Plaintiff.

Jurisdictional issues aside, Plaintiff has stated a claim for purposes of Rule 12(b)(6).  Her Complaint, Dkt. 1 ["Compl."], describes the manipulation and coercion that Defendants used to lure her into an exploitive situation.  Defendants knew Plaintiff feared her ex-husband and wanted to provide a stable home for her children.  They offered her employment and the opportunity to eventually own her own residence.  Once Plaintiff was reliant on Defendants—for money, for her home, for transportation—they exploited her labor and abused her physically and sexually. Defendant Paulo intimidated Plaintiff with stories of his violent past and arsenal of weapons. Defendants violated Plaintiff's privacy by entering her home, throwing out her possessions, and docking her pay at their whim.  Plaintiff was trapped in this exhausting, abusive household for

1

over three years before she managed to escape.  The fact of her escape, and the minimal freedoms Defendants allowed her, does not undermine her claims.

Defendants neglect to even pay lip service to the well-established principle that the Court must accept the truthfulness of the Plaintiff's allegations when considering a motion to dismiss. The introduction to their brief is filled with their own distorted version of facts, unsupported by any citation, and not in the complaint, which the Court cannot consider at this stage.  Mot. at 1-4. They cherry-pick facts from the complaint or fail to address the complaint at all.  The motion should be denied.

## FACTS

Plaintiff offers this summary of the facts, which are asserted in full in the complaint. Plaintiff is a 44-year-old woman who met Defendants in 2016, when she was at her most vulnerable.  Compl. ¶¶ 11, 16.  She was the sole caregiver to her two teenaged children, including a daughter with special needs, and she had recently divorced an abusive husband.  *Id.* ¶¶ 13-14. Her ex-husband was about to be released from prison, where he was serving time for offenses including assault of Plaintiff and her daughter.  *Id.* ¶ 14.  Plaintiff was suffering from diagnosed post-traumatic stress disorder, for which she was seeking counseling and treatment. *Id.* ¶ 15.  She was also relying on alcohol to cope with these traumatic events.  *Id.*

At the time, Plaintiff thought Defendants' offer of employment was good luck.  It gave her a source of money, which would allow her to avoid her ex-husband and give her children a place to live.  *See id.* ¶ 18.  Because of this, Plaintiff did not complain when she started working more and more than the original agreement.  *See id.* ¶ 19.  When Plaintiff's long hours at the farm contributed to the loss of her rental trailer, because the landlord thought she had abandoned it, Plaintiff welcomed Defendants' offer of a rent-to-own trailer for $500 per month.  *Id.* ¶ 21-22.

Plaintiff wanted to be safe from her ex-husband and support her children; Defendants knew about her situation, and they seemed to be offering her everything she wanted.

Little did she know, she was one of many vulnerable people who Defendants found and exploited. *See id.* ¶¶ 64-66. By late 2016, Plaintiff was fully reliant on Defendants: they paid her wages, they owned her residence, and they controlled her access to the outside world. *Id.* ¶¶ 25, 28, 40, 46. Defendants were also "nice" and supportive of Plaintiff and her family. They told her they were all family, and she wanted to be part of a healthy and kind family. *Id.* ¶ 27.

But once Plaintiff was dependent on Defendants and emotionally attached to them, they abused and exploited her. She worked increasingly difficult jobs out of fear of losing her income and home. *Id.* ¶¶ 29-41. She was sexually assaulted by Defendant Paulo and feared resisting his advances would cause her to lose everything, or worse. *See id.* ¶ 42-45, 58-59. Defendants' abuses of Plaintiff are outlined in the Complaint, and include physical and psychological abuse, such as hitting her and her son, docking her pay, invading her privacy, and accusing her of no longer loving her "family." *Id.* ¶¶ 46-52, 55, 57-63.

Plaintiff's eventual escape took years to facilitate. First, her son left home. *Id.* ¶ 67. She gained part-time jobs. Defendants begrudged her these jobs, and retaliated by docking her pay or forcing her to keep up her full-time farm work in addition. *Id.* ¶ 69-72. Nevertheless, contact with people who treated her well at her new job let Plaintiff see Defendants' abuse for what it was. *Id.* ¶ 73. Plaintiff sought documentation of the rent-to-own agreement for her trailer, which she had been participating in for years at that point. Defendants refused to offer her this paperwork. *Id.* ¶ 76. Plaintiff feared the idea of losing the opportunity to own her home, but she continued to fight for her independence. She bought a truck and entered into a romantic relationship. *Id.* ¶¶ 77, 82. Yet Defendants attempted to maintain control through guilt, threats, and manipulation—including

Defendant Paulo telling Plaintiff he was dying, which was a lie, and that she should break up with her boyfriend because of this. *Id.* ¶ 78. But the final straw was the revelation that Defendant Paulo had been exchanging inappropriate sexual text messages with her daughter. *Id.* ¶ 87. Defendant walked away from the trailer that she had paid so much of her income towards "owning," as well as her belongings, and sought an order for Protection From Abuse, which was granted. *Id.* ¶ 94.

## LEGAL STANDARD

When a defendant moves to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party asserting jurisdiction bears the burden of demonstrating that subject-matter jurisdiction exists. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). The Court may consider materials outside of the pleadings. *Davies v. United States*, 124 F. Supp. 2d 717, 719 (D. Me. 2000).

On a motion to dismiss under Rule 12(b)(6), a plaintiff's allegations are accepted as true and are construed in a light most favorable to the plaintiff. *Portugues-Santana v. Rekomdiv Int'l Inc.*, 725 F.3d 17, 25 (1st Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; "[t]his plausibility standard is 'not akin to a 'probability requirement,'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021), but rather requires only that Plaintiff advances her claims "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

**ARGUMENT**

**I.     THIS COURT HAS SUBJECT MATTER JURISDICTION AND THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY**

Plaintiff asserts claims for Trafficking With Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1581, *et seq*. ("TVPRA").   This Court therefore has jurisdiction over Plaintiff's trafficking claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1595, and supplemental jurisdiction over the state-law claims, which arise from the same conduct of Defendants, pursuant to 28 U.S.C. § 1367.   Defendants' arguments otherwise amount to obfuscation and should be rejected.

The Rooker-Feldman doctrine occupies "narrow ground."  *Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).   Rooker-Feldman applies only in the "'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Tyler v. Supreme Jud. Ct. of Mass.*, 914 F.3d 47, 50 (1st Cir. 2019).   None of these three conditions—that the Plaintiff is a "state-court loser[]," *Exxon Mobil*, 544 U.S. at 284, that the Plaintiff is complaining of an injury *caused* by the state-court judgment, and that the Plaintiff is seeking federal review of that state-court judgment—are met here.

**A.     Plaintiff is not a "state-court loser" because the state court did not find "no abuse."**

Defendants' argument is based on an incorrect premise: that Plaintiff lost in state court. The state court never found that there was no abuse.  Plaintiff sought an order for Protection From Abuse ("PFA") using a procedure that allows the state court to enter a PFA without a finding of abuse, if the parties voluntarily request a consent agreement.  19-A M.R.S §4007(1).  This

procedure obviates the need for an evidentiary hearing, *id.*, and indeed, no such hearing occurred in Plaintiff's case.

There is no confusion in the record that the PFA was entered without any findings on the issue of abuse.  The state court said "[T]his is a finding by agreement. There's no findings of abuse …, correct?"  Mot., Ex. B, 11:14-19.  The Order for Protection From Abuse, Mot., Exs. C, D, checks the box saying that "[t]he parties have agreed to the following Order, which is made without findings of abuse."  With these clear statements, Defendants' legal argument fails.

Plaintiff did not lose in state court, and therefore Rooker-Feldman does not apply.  First, Plaintiff was *granted* the PFA she sought.  Therefore, she did not lose in the state court.  Next, the agreement to no finding of abuse (*not* to a finding of no abuse) does not change this.  Rooker-Feldman is based on the inference that "if appellate court review of …state judgments is vested in the Supreme Court, then it follows that such review may not occur in the lower federal courts." *Kovacic v. Cuyahoga Cnty. Dep't of Child. and Fam. Servs.*, 606 F.3d 301, 309 (6th Cir. 2010). In other words, the doctrine prevents plaintiffs from taking their appeals to the wrong court. Therefore, the requirement that a plaintiff be the state-court "loser" refers to "final state-court judgments," not individual rulings in a case or settlements and stipulations.  *Hulsey v. Cisa*, 947 F.3d 246, 251 (4th Cir. 2020); *see also Cannon v. Spokane Merchs. Ass'n*, 502 F. App'x 683 (9th Cir. 2012) (overruling a district court dismissal of a case on Rooker-Feldman grounds because the Plaintiff entered into a settlement agreement).

Here, Plaintiff could not have appealed the absence of a finding of abuse, and she had no reason to do so.  She could not have done so because she agreed to resolve her PFA by a consent agreement without needing the court to make any finding of abuse, and because she was granted a PFA.  Defendants' citation to *Connolly v. Connolly*, 2006 ME 17, 892 A.2d 465 is inapposite,

because in *Connolly* the parties did *not* agree to a PFA without findings regarding abuse.  The appeal in *Connolly* dealt with whether the state court appropriately declined to conduct an evidentiary hearing *absent an agreement*.  *Id.* at 2006 ME 17, ¶ 8, 892 A.2d 467.  This case does not bind Plaintiff, who agreed to a PFA without findings regarding abuse and without an evidentiary hearing.

The Court should not extend Rooker-Feldman to cases where the Plaintiff was *not* the loser in a state court's final judgment.  There is no basis in law to do so, and it would only impede the orderly operation of state courts by discouraging settlements and stipulations.

**B.      Plaintiff is not complaining of an injury caused by a state-court judgment.**

Rooker-Feldman's second, independent requirement is not met here.  Rooker-Feldman is confined to cases "complaining of injuries caused by state-court judgments." *Exxon Mobil*, 544 U.S. at 284.  When the injury is caused by the defendant's actions, Rooker-Feldman does not apply. *Galibois v. Fisher*¸ 174 F. App'x 579, 580 (1st Cir. 2006) ("[I]f … a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."); *see also Coles v. Granville*, 448 F.3d 853, 859 (6th Cir. 2006); *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006).  "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010).

Here, Plaintiff asserts injuries caused by Defendants.  She does not argue that the state court decision harmed her.  Defendants cite to cases that illustrate well this distinction.  In *Miller v. Nichols*, 586 F.3d 53 (1st Cir. 2009), the plaintiffs in federal court "assert[ed] violations of statutory and constitutional rights *during the termination proceedings and particularly in reunification efforts mandated by state law*." *Id.* at 56 (emphasis added).  In *DuLaurence v.*

*Telegen*, 94 F. Supp. 3d 73 (D. Mass. 2015), the federal plaintiff contended that the defendants "engaged in unethical practices *during the first Superior Court action*" and therefore the state court judgment be declared void.  *Id.* at 78 (emphasis added).  And in *Mikhail v. Kahn*, 991 F. Supp. 2d 596 (E.D. Pa. 2014), the federal plaintiffs alleged that state court proceedings were corrupted by discrimination, bribery, and fraud, and that the entry of the PFA caused his injuries such as eviction from his marital home.  *Id.* at 610.  The very cases cited by Defendants illustrate the inapplicability of Rooker-Feldman to Plaintiff's case.  She complains of injuries caused by the Defendants' actions, not the state-court judgment.

### C.    Plaintiff is not seeking review and rejection of a state-court judgment.

Finally, Plaintiff is not "seeking review and rejection of [the state-court] judgment."  *Tyler v. Supreme Jud. Ct. of Mass.*, 914 F.3d 47, 50 (1st Cir. 2019).  First, as discussed above, there was no judgment made by the state court regarding abuse.  Moreover, she is not asking the Court to overrule, alter, or otherwise undermine the judgment issued by the state court in the PFA proceedings.  She is not challenging the state-court decision; her claims are independent from the decision.  *See Exxon*, 544 U.S. at 284.  Rooker-Feldman does not require identity between the issues being litigated, but it does apply only to cases where the plaintiff is seeking "an end-run around a final state-court judgment."  *Tyler*, 914 F.3d at 51.  Where, as here, it is clear that a plaintiff does not "seek to relitigate" a final judgment of a state court, Rooker-Feldman does not apply.  *Dalmau*, 544 F.3d at 68. The Court should deny Defendants' motion to dismiss for lack of jurisdiction because none of the three conditions for Rooker-Feldman are present here.

## II.    ISSUE PRECLUSION DOES NOT APPLY

The facts discussed above regarding the PFA explain also why issue preclusion, or collateral estoppel, does not apply.  Issue preclusion "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment."  *Portland Water*

*Dist. v. Town of Standish*, 2008 ME 23, ¶9, 940 A.2d 1097, 1100.  Issue preclusion does not require identity of claims or remedies, but it does require that a specific factual issue was actually litigated and decided in a prior judgment.  *Miller v. Nichols*, 586 F.3d 53, 61 (1st Cir. 2009).  Here, there was no finding regarding abuse.  *See* Section I.A, *supra*.  Plaintiff is not estopped from asserting abuse here.[1]

## III.   PLAINTIFF HAS STATED CLAIMS FOR WHICH RELIEF CAN BE GRANTED

Taking all well-pleaded facts as true, which the Court must do on motions to dismiss under Rule 12(b)(6), Plaintiff has stated claims for which relief can be granted.  *See Portugues-Santana v. Rekomdiv Int'l Inc.*, 725 F.3d 17, 25 (1st Cir. 2013).

### A.   Plaintiff has alleged facts supporting a claim of trafficking in violation of the TVPRA.

Count One of the Plaintiff's Complaint alleges violations of various provisions of the TVPRA: 18 U.S.C. §§ 1584, 1589, 1590, 1593A, 1594, 1595.  The facts in Plaintiff's Complaint support these TVPRA violations.

First, the TVPRA prohibits involuntary servitude, 18 U.S.C. § 1584.  Plaintiff has presented facts in her Complaint that show she was kept in a condition of involuntary servitude through physical coercion.  *See United States v. Alzanki*, 54 F.3d 994, 1000 (1st Cir. 1995) ("[A]ctual or threatened use of physical *or* legal coercion, intentionally causes the oppressed person reasonably to believe, given her 'special vulnerabilities,' that she has no alternative but to remain in involuntary service for a time.").  Defendants merely state that Plaintiff has alleged no facts showing involuntary servitude.  That is untrue.

---

[1] To the extent Defendants' motion also asserts claim preclusion based on the PFA, this argument fails.  The statute authorizing PFA orders under Maine law, 19-A M.R.S. 4007(1), expressly states that "[n]othing in this paragraph may be construed to limit the court's discretion to enter any of the other available relief under this chapter and *does not preclude a plaintiff from seeking monetary relief through other actions as permissible by law.*"  *Id.* 4007(1)(K) (emphasis added).

Plaintiff's complaint alleges that Defendants physically and sexually abused her and her children.   Compl. ¶¶ 42-44, 55.   Furthermore, Defendants knew of the Plaintiff's "special vulnerability[y]," given her history of abuse, and considered in light of that vulnerability, Defendant's actions caused her to believe she had to remain in their service.

Next, the TVPRA prohibits forced labor, 18 U.S.C. § 1589.   "Forced labor" is defined as obtaining work through "threats of force, physical restraint, or threats of physical restraint to that person or another person," "serious harm or threats of serious harm to that person or another person," "abuse or threatened abuse of law or legal process," or "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."   *Id.*

The TVPRA defines coercion as "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of the legal process."   22 U.S.C. § 7102(3).   This comprehensive view of coercion is echoed in the specific definitions of "forced labor" in 18 U.S.C. § 1589.   Forced labor includes "obtain[ing] the labor or services of a person . . . by means of the abuse or threatened abuse of law or legal process; or . . . by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."   18 U.S.C. § 1589(a).   "[S]erious harm" includes "nonphysical" and "financial" harm "that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

As those definitions show, psychological abuse and nonviolent coercion can create an environment of fear and intimidation that may prevent a worker from leaving an exploitive work situation.  Here, in addition to Plaintiff's description of the physical abuse she suffered from the Defendants, Plaintiff described rampant psychological abuse and coercion used to force her labor. The Complaint describes a vicious cycle where Defendants would verbally abuse Plaintiff and then assure her of her importance in a "family."  *E.g.* Compl. ¶¶ 50, 59.  Defendant Paulo kept a key to Plaintiff's home, entered it without permission, and at least once stood over Plaintiff while she slept.  *Id.* ¶ 52.  For years Plaintiff was dependent on Defendants not only financially, but also for access to outside world, given the rural setting in which they lived.  *Id.* ¶¶ 19, 28, 82 (before 2019, Plaintiff did not own a vehicle).  Defendants make no arguments as to why Plaintiff has not demonstrated a claim of forced labor, other than a conclusory statement that she has not.  But the facts in Plaintiff's complaint demonstrate that this claim can proceed.

18 U.S.C. § 1590 makes liable anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." Defendants argue that Plaintiff does not make out this claim because she "voluntarily sought employment" with Defendants and had a cellphone, a vehicle (eventually), and access to family and friends.  But Plaintiff's voluntary entry into employment with Defendants does not negate her trafficking claims; the TVPRA does not require that victims be kidnapped or stolen in order to make out a claim, nor does it require that victims be kept under "literal lock and key." *Paguirigan v. Prompt Nursing Emp. Agency*, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017) (rejecting defense as "absurd" that plaintiff was free to leave because she "had her own residence and phone"); *Mouloki v. Epee*, 262 F. Supp. 3d 684, 690, 701 (N.D. Ill. 2017) (denying summary judgment despite that plaintiff was free to "come and go from the household" and spend time with acquaintances).

11

Finally, the fact that Plaintiff eventually mustered the resources to acquire a new job, a vehicle, and eventually her freedom does not undermine her trafficking claims. Such a requirement would undermine the TVPRA by penalizing victims for their own escape, and is not supported by caselaw. *See Paguirigan v. Prompt Nursing Emp. Agency*, No. 17-cv-1302, 2019 WL 4647648, at *3 (E.D.N.Y. Sept. 24, 2019) (granting plaintiffs summary judgment on TVPRA claims against defendants where guestworker nurses quit due to unsafe working conditions despite a $25,000 liquidated damages penalty provision).

Next, 18 U.S.C. § 1593A prohibits knowingly benefitting from a violation of the TVPRA. Defendant's barebones argument is that Plaintiff failed to plead facts to support this claim. That is false. Plaintiffs Complaint recounts hours of forced labor performed by Plaintiff to Defendants' benefit. *See, e.g.*, Compl. ¶¶ 16-20.

Finally, Defendants argue that Plaintiff's claim of a civil conspiracy under 18 U.S.C. § 1594(b) fails because she is barred by issue preclusion due to the PFA and because she failed to state a claim under the TVPRA. As discussed above, Plaintiff has stated a claim under the TVPRA and issue preclusion does not bar these claims, so here too, Defendants' arguments fail.

### B.    Plaintiff has alleged facts supporting claims for unjust enrichment/quantum meruit.

Plaintiff alleged in her Complaint that between late 2016 and 2018, her usual work on the farm consisted of 12-hour days, 6 days per week. Compl. ¶¶ 19-20. She was paid no more than $100 per week for this work. *Id.* ¶ 20. Defendants argue that there is no claim for unjust enrichment or quantum meruit because Plaintiff "was paid for the work she performed." Mot. at 16. But to make this argument, Defendants assert that they paid Plaintiff extra money and that Plaintiff's tasks should have taken only 3 to 5 hours per day to complete. *Id.* In other words,

Defendants dispute the facts in the Complaint.  They cannot do so in a 12(b)(6) motion to dismiss. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 8 (1st Cir. 2011)

Defendants make no argument that $100 per week for 12-hour days of difficult manual labor, 6 days per week, gained by coercion and violence, is not unjust enrichment.  The facts as pleaded support Plaintiff's claim for unjust enrichment.  It would be "inequitable for the defendant to retain the benefit" of Plaintiff's labor "without payment of its value."  *See Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994).

## C.    Plaintiff's claim for assault and battery is not precluded.

Defendants argue that Plaintiff's claim for assault and battery should be dismissed because of issue preclusion stemming from the PFA order.  Because Defendants issue preclusion reasoning fails for the reasons stated above, *see* Sections I & II, *supra*, this argument also fails.

## D.    Plaintiff has alleged facts supporting a claim for fraudulent misrepresentation.

Plaintiff bases her fraudulent misrepresentation claim on two grounds.  First, she was hired at the rate of $100 per week to perform the limited work of tending to Defendants' rabbits.  Compl. ¶ 17.  That work escalated to 12-hour days of general farm labor.  *Id.* ¶ 20.  Second, she agreed to a "rent-to-own" arrangement with regards to the property she lived in, under which she would pay $500 per month, plus taxes and utilities, in exchange for ownership after five years.  *Id.* ¶ 22. When Plaintiff later requested documentation regarding this agreement, Defendants refused to provide documentation of the original agreement and attempted to have Plaintiff sign documentation with different terms.  *Id.* ¶ 76.

Defendants' misrepresentations about the scope of Plaintiff's work duties and nature of her living arrangement were knowingly false and induced the Plaintiff to provide money and labor to

Defendants for years, to her detriment.  *See Flaherty v. Muther*, 2011 ME 32, ¶ 45, 17 A.3d 640, 654.

###### E.      Plaintiff has alleged facts supporting a claim for breach of contract.

Plaintiff alleges that she was offered an employment contract of $100 per week for 3-5 hours of work per day, in the form of caring for Defendants' rabbits.  Compl. ¶ 17.  She further alleges that she worked for 12-hour days with no increase in pay.  *Id.* ¶ 20.  Defendants assert that she is not owed compensation for this work because "she did so of her own free will and as a result of the fact that she had nothing else to do."  Mot. at 18.  This is not in the complaint, and therefore cannot be considered by the Court.  Furthermore, this assertion is contradicted by the facts in the Complaint, which must be taken as true and which say that "she was required to do hard physical work she did not want to do and for which she was not compensated," *id.* ¶ 29, and that Defendants deducted money from her wages when she was perceived to be "rebellious," *id.* ¶ 47.[2]

###### F.      Plaintiff has alleged facts supporting a claim for failure to pay wages.

Defendants rebut an argument that Plaintiff does not make.  Plaintiff does not argue that she is owed minimum wages under Maine law for agricultural work.  Rather, she argues that she was never paid in full any wages reasonably owed to a person who performed the amount and type of work she performed for Defendants, as described in the complaint.  *See id.*; *see also Richardson v. Winthrop Sch. Dep't*, 983 A.2d 400, 402 (Me. 2009) ("The purpose of Maine's wage payment statute, 26 M.R.S. § 626, is to provide former employees with a cause of action to seek payment of unpaid wages and vacation time."); *Dinan v. Alpha Networks, Inc.*, 857 F. Supp. 2d 162, 166 (D. Me. 2012) ("Wages earned" refers to the "reasonable value of services provided").

---

[2] Defendants do not address Plaintiff's breach of contract claim regarding the rent-to-own contract for the trailer. Defendants also do not dispute Plaintiff's claims of intentional infliction of emotional distress and negligence.

Plaintiff has shown that she is entitled to relief under Maine law, 26 M.R.S.A. § 621-A through 626-A.  The penalties for unpaid wages under Maine law, 26 M.R.S.A. § 626, operate independently from the statutory definitions of employees for minimum wage purposes. *Madore v. Kennebec Heights Country Club*, 2007 ME 92, ¶14, 926 A.2d 1180, 1185 ("Section 623 does not control who may be considered an 'employee' for purposes of section 626 because the plain language of section 623 makes clear that the exclusions defined in section 663 only apply to sections 621–A through 623. Section 663 itself reinforces the fact that its definitions do not limit the application of section 626, because section 663 is in an entirely different subchapter of the statute, entitled "Minimum Wages," *see* 26 M.R.S. §§ 661–672 (2006), and the definitions are intended to apply only to that subchapter.").

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss should be denied.

Dated:  March 2, 2022                    */s/ Nicolaas Groeneveld-Meijer*

Nicolaas W. Groeneveld-Meijer (ME Bar No. 006892)
PINE TREE LEGAL ASSISTANCE, INC.
39 Green Street
P.O. Box 2429
Augusta, ME 04338-2429
207.552.3104
nicolaasgm@ptla.org

Andrew B. Cherry
Claire M. Lally
Kali N. Bracey
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
202.639.6070
acherry@jenner.com
clally@jenner.com
kbracey@jenner.com

**Counsel for Plaintiff, Jane Doe**

<u>CERTIFICATE OF SERVICE</u>

By my signature, I hereby certify that a copy of the foregoing was delivered on counsel of record via electronic notification using the CM/ECF system.

Dated:  March 2, 2022                    Respectfully Submitted,

Jane Doe
By Her Attorney,

*/s/        Nicolaas Groeneveld-Meijer*
Nicolaas W. Groeneveld-Meijer (ME Bar No. 006892)
PINE TREE LEGAL ASSISTANCE, INC.
39 Green Street
P.O. Box 2429
Augusta, ME 04338-2429
207.552.3104
nicolaasgm@ptla.org